UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE, 5100 Wisconsin Avenue, NW, Suite 400 Washington, DC 20016, <br><br> Plaintiff <br><br> v. <br><br> UNITED STATES DEPARTMENT OF AGRICULTURE Jamie Whitten Building 1400 Independence Avenue, SW, Washington, DC 20250, <br><br> Defendant. | Case No.: 20-2213 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This is an action under the Administrative Procedure Act, 5 U.S.C. § 706, and the Freedom of Information Act, 5 U.S.C. § 552, by the Physicians Committee for Responsible Medicine ("Physicians Committee"), seeking injunctive relief ordering the United States Department of Agriculture ("USDA") to comply with a petition, and respond to two relevant Freedom of Information Act requests, submitted by the Physicians Committee. The petition requested that USDA require meat and poultry processing plants to test their products for the presence of the SARS-CoV-2 coronavirus and publish the results. The petition also requested that USDA amend its safe handling labeling regulations such that all meat and poultry products carry disclosures regarding the virus.

2.  In just over half a year, at least 40,517 meatpacking workers have tested positive for COVID-19, and at least 189 have died of COVID-19. In that same time, more than 5,000,000 Americans have tested positive for COVID-19, and more than 163,000 have died of COVID-19. Despite these stark numbers—and without testing a single meat or poultry product for the presence of SARS-CoV-2, which causes COVID-19—USDA arbitrarily and capriciously rejected the petition in full, in violation of the Administrative Procedure Act. In addition, USDA's failure, after more than a year, to respond to the Physicians Committee's information requests violates the Freedom of Information Act.

## JURISDICTION AND VENUE

3.  Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706, and USDA's petition regulations, 9 C.F.R. § 392.5 and 7 C.F.R. § 1.28, and the Freedom of Information Act, 5 U.S.C. § 552(a)(6)(C)(i), the Physicians Committee has exhausted all administrative remedies and now seeks judicial review. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552, 706. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1361. Venue lies in this district under 5 U.S.C. § 703.

## PARTIES

4.  Plaintiff Physicians Committee is a nonprofit public health organization that advocates for preventive medicine through proper nutrition, encourages higher standards for ethics and effectiveness in medical research, and conducts clinical research on the relationships between food and disease. As part of these efforts, the Physicians Committee monitors federal food policy and dietary guidelines. The Physicians Committee is a national organization representing more than 175,000 members, including

12,000 physicians, as well as other medical professionals, scientists, and lay persons. The Physicians Committee brings this action on behalf of its members and on behalf of itself as an organization.

5.  Defendant USDA is a United States agency within the meaning of 5 U.S.C. § 552(f)(1). USDA regulates matters concerning agriculture.

## STATEMENT OF FACTS

6.  According to Johns Hopkins University, the first case of COVID-19 in the United States was reported on January 21, 2020. "Since then, the country has reported 5,094,400 cases, and 163,463 deaths."

7.  The Food and Environment Reporting Network reports that since the beginning of the COVID-19 epidemic, at least 471 meat processing plants have had confirmed cases of COVID-19, at least 40,517 meat processing plant workers have tested positive for COVID-19, and at least 189 meat processing plant workers have died of COVID-19.

8.  According to the Centers for Disease Control and Prevention, there are "[d]istinctive factors that affect workers' risk for exposure to SARS-CoV-2 in meat and poultry processing workplaces," as follows:

9.  "[M]eat and poultry processing workers often work close to one another on processing lines. Workers may also be near one another at other times, such as when clocking in or out, during breaks, or in locker/changing rooms."

10. "[M]eat and poultry processing workers often have prolonged closeness to coworkers (e.g., for 10-12 hours per shift). Continued contact with potentially infectious individuals increases the risk of SARS-CoV-2 transmission."

11. "[M]eat and poultry processing workers may be exposed to the infectious virus through respiratory droplets in the air – for example, when workers in the plant who have the virus cough or sneeze. It is also possible that exposure could occur from contact with contaminated surfaces or objects, such as tools, workstations, or break room tables. Shared spaces such as break rooms, locker rooms, and entrances/exits to the facility may contribute to their risk."

The Physicians Committee's Petition

12. In May 2020 the Physicians Committee submitted a petition and addendum (collectively "petition") pursuant to USDA's petition regulations, 9 C.F.R. § 392.5 and 7 C.F.R. § 1.28.

13. The petition explained that as of the time of filing, there had been at least 14,259 SARS-CoV-2 virus infections and 59 resulting deaths among U.S. meat and poultry processing plant workers since the COVID-19 epidemic began.

14. Meat and poultry processing plants have been central points of viral spread in humans. In South Dakota, more than half of the cases of COVID-19 statewide at the time of the petition's filing had occurred in workers at the Smithfield processing plant in Sioux Falls.

15. In meat and poultry processing plants, as in other settings, the SARS-CoV-2 virus is easily airborne, remaining detectable for 30 minutes or more in air samples. According to the Centers for Disease Control and Prevention, one "can become infected from respiratory droplets when an infected person coughs, sneezes, or talks" or "by touching a surface or object that has the virus on it, and then by touching your mouth, nose, or eyes."

16. Meat processing plants typically slaughter more than 300 cattle per hour and more than 1,000 pigs every hour. Poultry processing plants collectively slaughter more than 20 million birds every day, typically on high-speed automated production lines that process as many as 175 birds per minute.

17. On any given day, each processing plant worker and inspector comes in close proximity to thousands of animal carcasses, each an additional object capable of transmitting that individual's infectious respiratory droplets.

18. Before packaging, these carcasses are cut up, allowing for further spread from carcasses to implements to other carcasses.

19. According to a *New England Journal of Medicine* article published April 16, 2020, the SARS-CoV-2 virus is detectable for up to 4 hours on copper surfaces, 24 hours on cardboard, and 3 days on plastic or stainless-steel surfaces. A later review reported that coronaviruses can survive on Teflon, ceramic tile, glass, and stainless steel for at least five days.

20. The cut-up carcasses are then packaged, carrying the contamination to consumers.

21. As part of its public education programs, USDA advises consumers to refrigerate meat and poultry at temperatures below 40 degrees Fahrenheit.

22. Yet refrigeration at such temperatures preserves viruses. According to a 2010 University of North Carolina study, viruses kept at 4 degrees Celsius remained easily detectable throughout the full 28-day study period. This is far longer than the time required for products to be transferred from processing plants to stores, where they are purchased by consumers. Just as refrigeration of meat and poultry products greatly

extends viral viability, freezing permits virtually permanent viability of viruses transmitted from infected workers to products subsequently purchased by and handled by consumers.

23. Studies confirm that "infected handlers at slaughterhouses are repeatedly involved in transmission" of viral pathogens via food products to consumers.

24. Meat and poultry processing plants remain under intense pressure to produce, despite risks to workers and the public. Yet no U.S. processing plant tests its products for the presence of the SARS-CoV-2 virus.

25. Accordingly, the Physicians Committee's petition requested that USDA

- require processing plants, and all facilities shipping meat and poultry products into the country, to test their products for the presence of SARS-CoV-2 and immediately make their findings publicly available;

- amend its regulations such that all meat and poultry products carry, in their safe handling labeling, the following disclosure: "Warning: Workers in U.S. meat and poultry processing facilities have been sickened or killed by the SARS-CoV-2 virus, and this product has not been certified virus-free";

- take other steps to disclose to consumers the number of infected neat and poultry processing plant workers and inspectors, as well as the lack of product safety testing for the SARS-CoV-2 virus.

USDA's Unreasonable Denial of the Petition

26. On July 1, 2020, USDA denied the petition in full.

27. Regarding product safety testing, USDA stated that the petition did not "reference studies or include any supporting information to demonstrate that COVID-19, which is believed to spread from person-to-person, can be transmitted by meat and poultry products, or any other food."

28. Consistent with the petition, USDA acknowledged that "it may be possible that a person can contract COVID-19 by touching a surface or object that has the virus on it and then touching their own mouth, nose, or possibly their eyes."

29. But USDA dismissed safety concerns because "this is not thought to be the main way the virus is spread."

30. USDA suggested that federal guidelines "designed to help prevent worker exposure to SARS-CoV-2 in areas of the work environment where they have close contact with coworkers and supervisors" could instead substitute for product testing.

31. But in doing so, USDA ignored evidence cited in the petition and widely available otherwise that workers become infected in processing plants on a regular basis. For example, 5 percent of the 663 workers at one Perdue Farms poultry processing plant tested positive for COVID-19, meaning that not only do workers frequently become infected; at any given time, a sizable number of them are carrying and shedding the SARS-CoV-2 virus in processing plants.

32. Without testing a single product, USDA baselessly concluded that product testing "would serve no public health purpose."

33. USDA also characterized the Physicians Committee's proposed safe handling labeling language as "misleading because it inaccurately implies that meat and

poultry products that have not been 'certified as virus-free' may transmit COVID-19 or are somehow unsafe."

34. In doing so USDA ignored China's recent suspension of imports of poultry products from a Tyson Foods processing plant in Springdale, Arkansas, after a COVID-19 outbreak among hundreds of the workers there. China also has banned imports of shrimp from Ecuador, salmon from Norway, and pork from Germany due to viral viability in meat products. Because China is the nation most experienced in addressing coronavirus outbreaks, its actions aimed at establishing appropriate precautions merit attention, particularly as they are based on detailed information about meat and poultry processing—information that USDA, in denying the petition, arbitrarily refused to collect or disclose to the public.

35. USDA denied the petition's other requests as well.

36. On July 15, 2020, USDA published the "Scientific Report of the 2020 Dietary Guidelines Advisory Committee."

37. In this report, the Dietary Guidelines Advisory Committee, a federal advisory committee established by USDA, acknowledged that "we are in the midst of the COVID-19 epidemic" and that "those at most risk for the most serious outcomes of COVID-19, including hospitalization and death, are people afflicted by diet-related chronic diseases (obesity, type 2 diabetes, and cardiovascular disease)."

38. Yet in the 835-page report, USDA's Dietary Guidelines Advisory Committee did not make a single recommendation regarding dietary patterns that could prevent or address COVID-19.

The Physicians Committee's First Freedom of Information Request

39. On February 25, 2019, the Physicians Committee requested from USDA pursuant to the Freedom of Information Act, 5 U.S.C. § 552, the following records regarding the Dietary Guidelines Advisory Committee: nomination packages from USDA commodity research and promotion boards, including those for beef and pork: financial disclosures for all appointees to the Committee; related records and communications; and records demonstrating compliance with the Federal Advisory Committee Act.

40. On April 8, 2019, USDA acknowledged the Freedom of Information Act request and assigned it tracking number 2019-FNS-03249-F.

41. On June 10, 2019, the Physicians Committee emailed USDA's Freedom of Information Act specialist to request an update on the status of USDA's response to the pending information request.

42. The Physicians Committee has not received a response to this message or to the records request.

The Physicians Committee's Second Freedom of Information Request

43. On April 30, 2019, the Physicians Committee requested from USDA pursuant to the Freedom of Information Act, 5 U.S.C. § 552, the following additional records regarding the Dietary Guidelines Advisory Committee: copies of all nominations submitted by certain food industry associations.

44. On May 2, 2019, USDA acknowledged the Freedom of Information Act request and assigned it tracking number 2019-FNS-03716-F.

45. On June 10, 2019, the Physicians Committee emailed USDA's Freedom of Information Act specialist to request an update on the status of USDA's response to the pending information request.

46. The Physicians Committee has not received a response to this message or to the records request.

<u>USDA's Actions Harm the Physicians Committee and its Members</u>

47. The Physicians Committee is harmed by USDA's denial of its petition. USDA's refusal to disclose basic information about, and warn consumers regarding, infection rates and the potential contamination of food during the epidemic has made it more difficult and costly for the Physicians Committee to achieve its organizational objective of protecting its members and the public from the negative health effects of consuming harmful products. This has required the Physicians Committee to expend additional resources and divert funds to educating the public about potential SARS-CoV-2 contamination in meat and poultry products, e.g.:

- the Physicians Committee hosted a Congressional briefing titled "Confronting COVID-19: A Briefing on Prioritizing Human-Based Research";

- the Physicians Committee contacted laboratories about conducting research to determine the viability of SARS-CoV-2 in meat products;

- the Physicians Committee offered and continues to offer a weekly online "Fight COVID-19 With Food" class led by health experts and attended by thousands of people nationwide;

- the Physician Committee conducted and continues to conduct a weekly "Exam Room" nutrition podcast and a daily "Exam Room Live" nutrition webcast, both of which regularly address the relationship between food and COVID-19;

- the Physicians Committee hosted and continues to host weekly "Mission Critical" online events, attended by hundreds of members, in which its experts discuss COVID-19; and

- the Physicians Committee published "Coronavirus Prevention Tips."

48. Had USDA granted the Physicians Committee's petition, or preemptively taken the basic public health steps requested in the petition, the Physicians Committee would not have had to divert its limited funds for these purposes.

49. Members of the Physicians Committee and their children are also harmed by USDA's denial of the petition. The Physicians Committee's membership includes more than 12,000 physicians, as well as other medical professionals. Because USDA, in rejecting the Physicians Committee's petition, continues to withhold from the public valuable information about viral transmission, these medical professionals must expend additional resources to treat their patients. Tragically, one Physicians Committee physician member has had a patient who was a USDA processing plant inspector die of COVID-19. Other Physicians Committee's members and their children are unwittingly exposed to contamination through consumption of meat and poultry because USDA does not consider the SARS-CoV-2 virus a substance of concern in food products.

50. As a result of USDA's unreasonable denial of the Physicians Committee's petition, the Physicians Committee's members and their children—not to mention the

public in general—continue to be at risk of infection by the SARS-CoV-2 virus from consuming meat and poultry products.

## CLAIMS FOR RELIEF

### CLAIM ONE
### (Administrative Procedure Act)

51. The Physicians Committee realleges and incorporates by reference paragraphs 1–50.

52. In light of the epidemic, USDA's denial of the Physicians Committee's petition is arbitrary and capricious, in violation of the the Administrative Procedure Act, 5 U.S.C. § 706(2).

53. USDA's actions harm the Physicians Committee as described in paragraphs 47–50.

### CLAIM TWO
### (Freedom of Information Act)

54. The Physicians Committee realleges and incorporates by reference paragraphs 1–50.

55. According to the Freedom of Information Act, 5 U.S.C. § 552(a)(6), an agency shall, within 20 business days of a request, determine whether or not it will comply with the request and notify the requester of its determination and reasoning.

56. USDA's failure to provide a determination to the Physicians Committee regarding request 2019-FNS-03249-F within 20 business days constitutes a violation of the Freedom of Information Act.

**CLAIM THREE**
**(Freedom of Information Act)**

57. The Physicians Committee realleges and incorporates by reference paragraphs 1–50.

58. According to the Freedom of Information Act, 5 U.S.C. § 552(a)(6), an agency shall, within 20 business days of a request, determine whether or not it will comply with the request and notify the requester of its determination and reasoning.

59. USDA's failure to provide a determination to the Physicians Committee regarding request 2019-FNS-03716-F within 20 business days constitutes a violation of the Freedom of Information Act.

**RELIEF REQUESTED**

WHEREFORE, the Physicians Committee respectfully requests that this Court:

A. Declare that USDA violated the Administrative Procedure Act by rejecting the Physicians Committee's petition;

B. Order USDA to require processing plants, and all facilities shipping meat and poultry products into the country, to test their products for the presence of SARS-CoV-2 and immediately make their findings publicly available;

C. Order USDAD to amend sections 317.2(l)(2) and 381.125(b) of Title 9 of the Code of Federal Regulations such that all meat and poultry products regulated by USDA carry, in their safe handling labeling, disclosures regarding the SARS-CoV-2 virus;

D. Order USDA to promptly respond to the Physicians Committee's Freedom of Information Act requests;

    E.    Award the Physicians Committee its reasonable attorney fees and litigation costs incurred in this action; and

    F.    Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Mark Kennedy

_____
Mark Kennedy (Bar No. 493380)
PHYSICIANS COMMITTEE FOR
RESPONSIBLE MEDICINE
5100 Wisconsin Avenue, NW, Suite 400
Washington, DC 20016
Attorney for Plaintiff
(202) 527-7315
(202) 527-7415 (fax)

Dated: August 12, 2020