UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHYSICIANS COMMITTEE FOR
RESPONSIBLE MEDICINE,

    Plaintiff,

  v.

UNITED STATES DEPARTMENT OF
AGRICULTURE,

    Defendant.

Civil Action No. 20-cv-2213 (TSC)

### MEMORANDUM OPINION

Plaintiff Physicians Committee for Responsible Medicine brings this action against Defendant U.S. Department of Agriculture ("USDA") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Physicians Committee seeks injunctive relief requiring USDA to comply with a petition Physicians Committee submitted in May 2020, as well as an order requiring USDA to respond to two FOIA requests. *See* Compl., ECF No. 1. USDA has filed a Partial Motion to Dismiss Physicians Committee's APA claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, failure to state a claim under Rule 12(b)(6). Def.'s Partial Mot. to Dismiss, ECF No. 11. For the reasons set forth below, the court will **GRANT** USDA's Partial Motion to Dismiss for lack of subject matter jurisdiction. The court need not reach whether Plaintiff has failed to state a claim.

### I.  BACKGROUND

Physicians Committee is a nonprofit public health organization representing more than 175,000 members, including physicians, medical professionals, scientists, and lay persons.

Compl. ¶ 4. It advocates for preventive medicine through nutrition, encourages higher standards in medical research, and conducts clinical research on the connection between food and disease. *Id*.

In May 2020, Physicians Committee submitted an emergency rulemaking petition to USDA requesting that USDA:

1. Require all processing plants operating in the U.S. and all facilities shipping meat and poultry products into the United States, to test their products for the presence of SARS-CoV-2 and immediately make their findings publicly available;

2. Require all such facilities to report to local public health authorities, on a weekly basis, the number of workers or worker family members with presumptive or confirmed SARS-CoV-2 infection and those dying of COVID-19.

3. Report via the USDA web site, on a weekly basis, the number of meat and poultry plant inspectors with presumptive or confirmed SARS-CoV-2 infection and those dying of COVID-19.

4. Amend sections 317.2(l)(2) and 381.125(b) of Title 9 of the Code of Federal Regulations such that all meat and poultry products regulated by USDA carry, in their safe handling labeling, the following disclosure: "Warning: Workers in U.S. meat and poultry processing facilities have been sickened or killed by the SARS-CoV-2 virus, and this product has not been certified virus-free."

5. Publish, and distribute to all major retail facilities, notices to be placed at meat and poultry counters and at check-out counters, stating as follows: "Warning: Workers in U.S. meat and poultry processing facilities have been sickened or killed by the SARS-CoV-2 virus, and this product has not been certified virus-free."

Physicians Comm. Emergency Rulemaking Pet., Ex. A, ECF No. 11-3 at 5.

In the petition, Physicians Committee asserts that by May 2020, there had been at least 14,259 COVID-19 virus infections and fifty-nine resulting deaths among U.S. meat and poultry processing plant workers. *See id.* at 2. Physicians Committee also claims that COVID-19 is easily airborne and has the potential to remain in air samples for up to thirty minutes. *See id.* at

3. The petition cited findings from the Centers for Disease Control and Prevention ("CDC") indicating that "one 'can become infected from respiratory droplets when an infected person coughs, sneezes, or talks' or 'by touching a surface or object that has the virus on it, and then by touching your mouth, nose, or eyes.'" *Id*.

Further, Physicians Committee asserts that meat processing plant workers and inspectors work within proximity to thousands of animal carcasses, which are capable of transmitting workers' and inspectors' infectious respiratory droplets to consumers. *See id.* The petition describes how methods of cutting, packaging, and refrigerating meat and poultry increase the risk of transmission or preservation of contamination. *See id.*

On July 1, 2020, USDA denied Physicians Committee's petition on the grounds that it did not include sufficient "supporting information to demonstrate that COVID-19, which is believed to spread from person-to-person, can be transmitted by meat and poultry products, or any other food." USDA Resp. to Pet., Ex. B, ECF No. 11-4 at 3. USDA suggested alternatives to Physicians Committee's requests, such as following COVID-19 guidance published by the CDC and the Occupational Safety and Health Administration ("OSHA"). *See id.*

Physicians Committee alleges that, because USDA denied their petition, it has been forced to "expend additional resources and divert funds to educating the public about potential" COVID-19 contamination from meat and poultry. Compl. ¶¶ 47-48. It also claims that because USDA is withholding "valuable information about viral transmission" from the public, Physicians Committee's physician and medical professional members must "expend additional resources to treat their patients." *Id*. ¶ 49. And, because USDA denied its petition, its members, their children, and the public "continue to be at risk of infection by the [COVID-19] virus from consuming meat and poultry products." *Id*. ¶ 50.

## II.     LEGAL STANDARD

At the motion to dismiss stage, the court must "treat the complaint's factual allegations as true," *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), but it need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts in the complaint. *Trudeau v. Fed. Trade Comm'n,* 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (internal quotation marks omitted)).

To survive a Rule 12(b)(1) motion a plaintiff must prove that the court has subject matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *US Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). "For this reason, 'the [p]laintiff's factual allegations in the complaint … will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim," *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F.Supp. 2d 9, 13–14 (D.D.C. 2001) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)), and a "court may consider materials outside the pleadings" to decide the motion. J*erome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## III.     ANALYSIS

USDA argues that the court does not have subject matter jurisdiction because Physicians Committee lacks standing to challenge the denial of the emergency rulemaking petition. ECF No. 11 at 17. To establish standing a plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant his invocation of federal [subject matter] jurisdiction." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982). Specifically, the plaintiff must allege (1) an injury—an invasion of a protected interest—that is "concrete and particularized," and "actual or imminent" (2) fairly traceable to the challenged action of the defendant and (3) "likely" to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. If a plaintiff's

allegation of injury is insufficient, the court need not address the other two prongs of the test. *See id.* at 580. Here, the parties dispute whether Physicians Committee has alleged an "injury" under a theory of either organizational or associational standing.[1]

1. Organizational Standing

To prove organizational standing, an organization must show that the defendant's conduct inflicts a "concrete and demonstrable injury to the organization's activities" that "constitutes far more than simply a setback to the organization's abstract social interests." *Havens Realty Corp.*, 455 U.S. at 379. To meet the *Havens* standard, an organization must first show a "direct conflict between the defendant's conduct and the organization's mission." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996). "If the challenged conduct affects an organization's activities, but is neutral with respect to its substantive mission," then it is "'entirely speculative' whether the challenged practice will actually impair the organization's activities." *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011) (quoting *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990)).

A court begins inquiry into an organization's Article III standing by "asking whether defendant's allegedly unlawful activities injured plaintiff's interest in promoting its mission," and if the answer is yes, the court then asks, "whether plaintiff used its resources to counteract that injury." *Id.* The organization may not "manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit." *Spann*, 899 F.2d at 27; *see also Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1142 (D.C. Cir. 2011) (holding that organization's diversion of resources to the investigation of alleged discriminatory practices, and the ensuing

---

[1] Physicians Committee has not asserted that it is entitled to informational standing.

litigation was a "self-inflicted" budgetary choice that did not constitute an injury in fact); *Cf., People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1097 (D.C. Cir. 2015) (concluding that an organization expending resources to respond to and counteract a defendant's conduct, rather than to prepare or investigate for litigation, "suffered a concrete and demonstrable injury").

In *Havens Realty Corp.*, the Supreme Court held that an organization dedicated to promoting equal access to housing had standing to challenge defendants' practice of steering prospective tenants away based on their race, because defendants' practice "perceptibly impaired [the organization's] ability to provide counseling and referral services for low-and moderate-income home-seekers. . . ." 455 U.S. at 379.

Since *Havens Realty Corp.*, the D.C. Circuit has held that an organization's "self-serving observation that it has expended resources to educate its members and others regarding [a challenged statutory provision] does not present an injury in fact," particularly if "[t]here is no evidence that [the challenged provision] has subjected [the organization] to operational costs beyond those normally expended to review, challenge, and educate the public." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995) (finding that an organization did not allege injury sufficient for standing because the challenged statute did not force it to expend resources that kept it from pursuing its purpose). Nor is standing found "when the only 'injury' arises from the effect of the regulations on the organizations' lobbying activities." *Ctr. for L. & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005) (finding no standing where an organization claimed a federal rule forced it to change to a more costly lobbying strategy).

In contrast, the Circuit held in *People for the Ethical Treatment of Animals* that an organization's alleged injury was sufficient to support standing because the USDA's refusal to apply the Animal Welfare Act to birds impaired the organization's mission by denying it access to bird-related Animal Welfare Act information and by preventing it from seeking redress for bird abuse.  797 F.3d at 1091.  USDA's refusal consequently caused the organization to expend resources to counter the injuries by researching and submitting complaints to local, state, or federal agencies.  *Id.*

Physicians Committee's stated mission is to advocate for preventive medicine through proper nutrition, encourage higher standards for ethics and effectiveness in medical research, conduct clinical research on the connection between food and disease, and monitor federal food policy and dietary guidelines.  *See* Compl. ¶ 4.  It claims that USDA's denial of its petition caused it to expend additional resources and divert funds to educate the public about potential Coronavirus contamination in meat and poultry products.  *Id.* ¶ 47.  But USDA's denial did not keep Physicians Committee from fulfilling specific tasks essential to its organization, as in *Havens Realty Corp.*, 455 U.S. at 379, nor did Physicians Committee have to expend resources to counter defendant's actions, as in *People for the Ethical Treatment of Animals*, 797 F.3d at 1094.

Physicians Committee petitioned USDA to require Coronavirus testing of meat and poultry products, include a safe handling label, and disclose to consumers the number of infected meat and poultry processing plant workers and inspectors, as well as the lack of product safety testing.  *Id.* ¶ 25.  USDA denied the request on the grounds that its resources would be better spent coordinating with local health officials as well as implementing the CDC and the OSHA guidance to prevent the spread of COVID-19 among meat and poultry workers.  *See* Ex. B, ECF

No. 11-4 at 3.  Physicians Committee claims that in response to the denial, it hosted a Congressional briefing regarding COVID-19, contacted laboratories about conducting research, and hosted a weekly online class called "Fight COVID-19 With Food" to protect its members and the public from the negative health effects associated with consuming harmful products.  *See* Compl. ¶ 47.  But these activities, which appear to be in response to the global pandemic rather than USDA's denial, serve Physicians Committee's general mission of advocating for preventive medicine and conducting research on the connection between food and disease.  The organization's representations do not show that USDA's petition denial caused it to expend resources "beyond those normally expended to review, challenge, and educate the public." *Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1434.  Thus, Physicians Committee has not alleged an organizational injury sufficient to support standing.

### 2. Associational Standing

An organization may seek to assert standing on behalf of its members by alleging that "its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action."  *Warth v. Seldin*, 422 U.S. 490, 511 (1975).  An organization "only has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests it seeks to protect are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Fund Democracy, LLC v. S.E.C.*, 278 F.3d 21, 25 (D.C. Cir. 2002).  The organization must show that "at least one specifically-identified member has suffered an injury-in-fact." *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006).  It is "not enough to show…there is a substantial likelihood that at least one member

may have suffered an injury-in-fact," rather, "the identity of the party suffering an injury in fact must be firmly established." *Id.*

In *Am. Chemistry Council*, the plaintiff challenged the Department of Transportation's Final Rule on the "Applicability of the Hazardous Materials Regulations to Loading, Unloading, and Storage" on the grounds that the rule failed to protect products and vehicles that plaintiff's members used to transport hazardous materials. 468 F.3d at 814. The Circuit found that none of the organization's specific members suffered an injury because the organization did not indicate that any member had been or would be working in specific areas with safety concerns. *See id.* at 819 ("It is not enough to allege that petitioners' associations comprise the majority of the workers who handle hazardous materials.").

Here too, Physicians Committee fails to identify a specific member who has suffered an injury. Physicians Committee claims that USDA's denial of its petition has caused it members and their children to be at risk of Coronavirus infection from consuming meat and poultry products and caused members to expend additional resources to treat their patients, including one member who had a patient—a USDA processing plant inspector—die from COVID-19. *See* Compl. ¶¶ 49–50. But Physicians Committee has not indicated that its members work in the food processing industry, eat meat and are at risk of consuming infected products, or regularly treat COVID patients who became ill from working in the meat processing industry or consuming infected meat. And, as to the member whose patient died from COVID-19, Physicians Committee does not indicate that the member treated the patient for COVID-19 or that the patient got COVID-19 from infected meat or from working in a meat processing plant. As in *Am. Chemistry Council*, Physicians Committee has not indicated that its members have been or will be working in specific areas of safety concern, such as meat and poultry processing

plants. Thus, Physicians Committee has not alleged an associational injury sufficient to support standing.

## IV. CONCLUSION

For the foregoing reasons, the court will **GRANT** Defendant's Partial Motion to Dismiss for lack of subject matter jurisdiction.

Date: February 9, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge